Order accordingly.

---

CORNELIUS W. VANWINKLE v. EDWARD CURTIS and others.

The rule that in injunction bills the particular title and interest of the complainant must be set forth, is more especially applicable to cases of waste.

But in cases of trespass and nuisance, the title and estate of the complainant are set out with sufficient certainty in a bill for an injunction, if the complainant alleges himself to be the owner of the premises in fee simple by purchase, and to be in possession.

A greater degree of precision in cases of trespass or nuisance is not required, especially where it is not alleged in the bill that the defendants make any pretence of right in themselves.

In cases of trespass or nuisance, an injunction will not be granted, unless the injury about to be committed is of a serious, permanent and irreparable character, such as cannot well be compensated in damages, and which therefore requires the extraordinary power of chancery to prevent its commission.

Where it appears that the stream, a part of which is sought to be diverted, runs through a corner of the complainant's farm, a quarter of a mile from his dwelling; that it runs through low, swampy, marshy ground, and is not nor has ever been applied to any practical use, equity will not interfere by injunction to prevent the diversion.

BILL for injunction, to restrain the defendants from partially diverting a stream of water, which flowed through the com-

[Vanwinkle v. Curtis et al.]

plainant's land. On filing the bill an injunction issued, as prayed for. The defendants having answered, moved to dissolve the injunction. The cause was heard upon the motion to dissolve, on bill and answer. The grounds of the application are fully stated in the opinion of the court.

*E. Vanarsdale,* for the defendants, in support of the motion.

*T. Frelinghuysen,* contra.

THE CHANCELLOR. The bill was for an injunction to restrain the defendants from diverting a water course. It charges, that the complainant is owner of a farm in the county of Essex, in fee simple, of about seventy acres, and that a stream of water, known by the name of the Third river, has run from time immemorial through the said farm, until it enters the pond of the defendants' paper-mill. That the defendants own a paper-mill, mill-dam and pond immediately below the farm, which have existed there for forty years, and during all that time have been supplied with water from said stream as it now runs, and has immemorially run through said farm. That the stream greatly fertilizes the fields of complainant, serves to water his cattle, and has a head and fall on his land which makes it of still greater value as a mill seat and privilege, which may be disposed of or used to profit and advantage. That the defendants are about diverting the stream from its natural channel above the farm of the complainant, so as to bring it into their dam on the southwestern side of their pond, instead of where it now enters; and that, having offered an inadequate compensation for the privilege, which was refused, they are about doing it without leave of the complainant. The bill then charges that the stream is of great value to the complainant, and that he apprehends and believes that if the canal is suffered to be dug and completed, it will not only destroy the value of the stream, as a mill privilege, on said farm, but in dry times will cut off the complainant from the usual supply of water for his cattle and the ordinary purposes of

[Vanwinkle v. Curtis et al.]

husbandry. That unless restrained, they will soon finish their canal, and leave the complainant to uncertain litigation and suits for damages, for the injury done.

The answer admits that the complainant is the owner of the farm mentioned in his bill, and has owned it about three years, having paid or agreed to pay for it twenty-two hundred dollars. It admits further, that the stream runs and always has run through one corner of the farm, leaving a strip of land containing less than one acre and a half on the southerly side of the stream, which does not otherwise run through the farm. That the said land is not worth more than thirty dollars per acre, is wet and swampy, producing coarse bog grass, bushes and briers, and principally, if not only, used in the spring season for early pasture for cattle. It admits that the stream has always run where it now does, but denies that it fertilizes the fields of the complainant, or is used by him for watering his cattle, or has a head and fall on the said farm for a mill seat and privilege to be used and disposed of for that purpose; except that the said complainant has about eighteen inches, and not exceeding two feet fall on said stream, which has never been used, and probably never will be used to the end of time as a mill seat, or for any such purpose. The answer then alleges that the lands of complainant lying along said stream, are used for pasture, and not cultivated, and on the northerly side thereof are low, miry, swampy meadows, part bearing cranberries, with many springs on the side of the said stream; that the stream is nearly a quarter of a mile from the complainant's house, and is not used by him for watering his cattle, but that he uses a large spring near his house for that purpose, which affords an ample supply at all seasons for his own cattle and those of his neighbors. That the defendants are anxious to increase their water-power by bringing a part only of said stream, by means of a canal, to their mill. That they do not intend, nor will they ever, unless by consent, take all the water of said stream, but leave a large part to follow the usual course into the pond. The answer then details the particulars of various attempts made to come to some agreement

[Vanwinkle v. Curtis et al.]

about compensation, and insists that the offers of the defendants were an adequate and more than an adequate compensation for any injury the complainant might sustain by the partial diversion of the stream in the manner contemplated by the defendants. And the defendants insist, that the injury complained of is neither grievous nor irreparable; that the value or substance of the inheritance is not put in jeopardy, nor does it injure the value of the property of the complainant; and that he ought to be left to his remedy at law.

The motion now is, to dissolve the injunction which was ordered on the exhibition of the bill.

Upon the case made by the complainant in his bill, the injunction was properly awarded before answer. The injury about to be sustained was alleged to be of a permanent and serious character, and the mischief would have been accomplished but for the interference of the court. The title and estate of the complainant were set out with sufficient certainty. He alleges himself to be the owner in fee simple by purchase, and to be in possession. A greater degree of precision is not required in cases of trespass or nuisance, especially where it is not alleged in the bill that the defendants made any pretence of right in themselves. The rule that in injunction bills, the particular title and interest of the complainants must be set forth, is more especially applicable to cases of waste. The defendant then is in possession; and the party seeking to restrain him, must do it on the ground of some privity of estate. It is necessary, therefore, that the complainant should set out his right with accuracy and certainty, that the court may judge of the propriety of interference. And it is because the defendant is in possession, and claiming the right to do the acts complained of, that an injunction will not issue in cases of waste before answer, except it be absolutely necessary. But the reason of the rule does not apply to cases like the one now under consideration.

The only question of any importance to be decided is, whether the injunction shall now be dissolved upon the answer of the defendants, and the complainant be put to his legal remedy.

[Vanwinkle v. Curtis et al.]

That the act about to be committed by the defendants, and from the commission of which they were restrained, was an unlawful act, admits of no question, from the pleadings. They can have no legal right to divert the flow of the water from its accustomed channel, and thereby deprive the complainant of any material part of it. In Massachusetts, the privilege of taking water in certain cases, upon making compensation, is given to mill owners; but it is by special statute, and is not in accordance with the principles of the common law, by which that species of property is protected in this state. If the right of ownership is violated, the law will give redress; and where the appropriation of private property, though not of any great value, has been intentional and without permission, the amount of redress should not be weighed in golden scales.

But it is not in every case of infringement of private right, that a court of equity will interfere by injunction. In a court of law the inquiry is, whether a wrong has been committed; and if it has been, reparation must be awarded. Here the inquiry is, whether the injury about to be committed is of a serious, permanent and irreparable character, such as cannot well be compensated in damages, and which therefore requires the extraordinary power of chancery to prevent its commission. It is important to preserve this distinction. The harmony and usefulness of the two courts are both promoted, and the interests of the public better served, by keeping the jurisdictions separate.

The principle on which equity interposes for the prevention of trespasses and injury of that description, where there is no privity of contract or estate, is well understood. The only difficulty is in applying it to the different cases as they arise.

In applying it to the case now under consideration, I am of opinion, upon the facts as presented by the pleadings, that the injunction should be dissolved, and the complainant be left to his legal remedy. The bill itself does not allege that the injury to be sustained will be irreparable. But it charges facts which, standing uncontradicted, are sufficient to induce a conviction that it will be serious and permanent.

The principal facts are, that the defendants, by cutting the canal and diverting the stream, will destroy a mill privilege, and in dry seasons deprive the complainant of the benefit of water for his cattle and the ordinary purposes of husbandry. These are both met by the answer. Taking that to be true, as I am bound to do on this occasion, it is evident the complainant has no mill site on his land, nor such fall of water as can be turned to any considerable advantage. And it is to be remarked, that he does not set out in his bill that he ever had any idea or design of using the water for that purpose. As to the other charge, that in dry seasons he would be deprived of the benefit of water for his cattle and the ordinary purposes of husbandry, it is denied by the answer that the stream is now used, or has ever been used, either for watering cattle or irrigating and fertilizing the land. It appears that the complainant has a much more convenient as well as a permanent resource for watering his cattle, and that the ground through which the stream runs is low, marshy and swampy ground, and not susceptible of being fertilized by irrigation. Such being the case, it is not conceived that the complainant's injury can be of that permanent and serious character as cannot be compensated in damages, and calls for the preventive power of the court.

The case of *Gardner v. The Village of Newburgh*, 2 John. *Chan. R.* 162, was greatly relied on by the complainant's counsel to sustain the injunction. The case is valuable in many respects. It asserts the concurrent jurisdiction of chancery over private nuisances, and proves it to be ancient and well established; and that the foundation of it rests in the necessity of a preventive remedy, where great and immediate mischief or material injury would arise to the comfort and useful enjoyment of property. This is the true doctrine of the court, and it was properly applied in that case; for it appeared by the bill, that the water about to be diverted supplied at the time a brick-yard on the plaintiff's farm, a large distillery, erected at great expense, and a churning-mill, and afforded water for a mill seat, where he was about to erect a mill for grinding plaister of paris. The bill was

[Vanwinkle v. Curtis et al.]

sworn to and corroborated by sundry affidavits, and it was shown that all the improvements would receive immediate and great injury. The injunction in that case was properly granted, and if I had similar grounds on which to proceed, I would willingly follow the example. But when it is made to appear that the stream, a part of which is sought to be diverted, runs through a corner of the complainant's farm, a quarter of a mile from his dwelling; that it runs through low, marshy, swampy ground, and is not nor has ever been applied to any practical use, there is no such great, immediate or permanent injury as will authorize the continuance of the injunction.

In the case of *Quackenbush* v. *Van Riper*,\* which was on an injunction to restrain a private nuisance, the court acted upon the same principle now recognized, and refused to interfere, because it appeared that the injury was neither serious nor immediate. In granting the application now made, I follow that decision, believing it to be founded on safe authority. If that is to be departed from, I know not where the power of this court is to end. It would lead to an interference in all cases where the least invasion of private property is about to occur. "It would have to adopt the principle, that an injunction will issue for the prevention of every trespass or infringement of right, where a suit at law might be brought." Such is not its province, and should not be its practice.

Injunction dissolved.

\* Ante, page 350,